IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ELLEN M. McCRACKEN,

Plaintiff,

v.

PORTLAND GENERAL ELECTRIC, et al.,

Defendant.

CV-10-937-ST

FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge:

Plaintiff, Ellen McCracken ("McCracken"), appearing *pro se*, filed this action on August 10, 2010. In her initial pleading filed against Portland General Electric ("PGE") and the Public Utility Commission of Oregon ("PUC"), McCracken sought an injunction prohibiting PGE from shutting off her electrical service. Complaint and Statement of Material Facts in Support of Motion for Injunction (docket #2). Following a hearing on August 13, 2010, Judge

Anna J. Brown denied McCracken's request for a temporary restraining order, concluding that the court lacked jurisdiction (docket #11). Judge Brown adhered to that ruling following McCracken's subsequent two requests for reconsideration (dockets # 14 & # 35).

This court appointed *pro bono* volunteer counsel for the limited purpose of reviewing McCracken's claims (docket # 24). After completion of that review, this court allowed volunteer counsel to withdraw and ordered McCracken to proceed *pro se* (docket # 26).

McCracken filed an Amended Complaint on January 7, 2011 (docket # 37). She also filed a Motion for a Temporary Restraining Order and Preliminary Injunction (docket # 45), seeking an order requiring PGE to restore her electrical service and never turn it off again. Judge Brown denied this motion on February 7, 2011, and again advised McCracken that she had failed to establish subject matter jurisdiction and had to pursue her dispute with PGE through administrative proceedings before the PUC or in state court (docket # 51, pp. 8-11). For similar reasons, Judge Brown also denied McCracken's subsequent Motion for Preliminary Injunction (dockets # 73 & # 75).[1]

The Amended Complaint alleges that PGE has not properly credited payments made on her behalf through the Low Income Home Energy Assistance Program ("LIHEAP").[2] It names the following defendants: PGE and its CEO and President, James Piro; the PUC; the Oregon Department of Housing and Community Services ("DHCS") and its LIHEAP coordinator,

---

[1] Judge Brown also advised that she will not address any further motions for temporary injunctive relief related to McCracken's billing dispute until Findings and Recommendations are issued on defendants' pending motions to dismiss (docket # 75). Accordingly, McCracken's additional motions for preliminary injunction (docket # 76, # 77, # 80) have been denied for that reason and also for defective notices of service (dockets # 79 & # 81).

[2] LIHEAP, an assistance program designed to help low-income households with home heating costs, is federally funded through the U.S. Department of Health and Human Services. *See* http://www.oregon.gov/OHCS/SOS_Low_Income_Energy_Assistance_Oregon.shtml (last accessed May 9, 2011).

Melissa Torgerson ("Torgerson"); the Oregon Department of Human Services ("DHS") and its Director for Seniors and People with Disabilities, Dr. Bruce Goldberg ("Goldberg"), and District Manager, Gene Sundet ("Sundet"); and the former Governor of the State of Oregon, Theodore Kulongoski ("Kulongoski").

The State Defendants (PUC, DHCS, Torgerson, DHS, Goldberg, Sundet, and Kulongoski) filed a Motion to Dismiss (docket # 47). In addition, PGE filed a Motion to Dismiss (docket # 54). Following multiple extensions of time to allow McCracken adequate time to respond to those motions (dockets # 85 & # 89), McCracken instead filed a Notice of Appeal (docket # 93). This court has denied McCracken's requests to retain her *in forma pauperis* status on appeal and stay this action pending the completion of her appeal (docket # 98). For the reasons that follow, the motions to dismiss should be granted.

**STANDARDS**

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S Ct 1937, 1949 (May 18, 2009), citing *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*, quoting *Twombly*, 550 US at 555. In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*, quoting *Twombly*, 550 US at 570.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions which are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3d 895, 899-900 (9th Cir 2007); *Knievel v. ESPN*, 393 F3d 1068, 1076 (9th Cir 2005). The court need not accept as true allegations in the complaint that contradict these sources. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F3d 992, 998 (9th Cir 2010).

*Pro se* complaints are held to a less strict standard than those drafted by a lawyer. *Erickson v. Pardus*, 551 US 89, 94 (2007); *Bonner v. Lewis*, 857 F2d 559, 563 (9th Cir 1988). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *See Doe v. United States*, 58 F3d 494, 497 (9th Cir 1995); *Eldridge v. Block*, 832 F2d 1132, 1136 (9th Cir 1987). Nevertheless, the court may dismiss a *pro se* complaint outright where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Labs.*, 622 F2d 458, 460 (9th Cir 1980) (citations omitted); *see also Akao v. Shimoda*, 832 F2d 119, 120 (9th Cir 1987).

## FINDINGS

### I. Allegations

McCracken, a 56-year old single female, is permanently disabled as a result of five traumatic injuries between 1990 and 2003. Amended Complaint, pp. 1, 10. She suffered a

traumatic brain injury in 2003 which ended her abilities to practice clinical nursing and to teach. *Id*, p. 11. Every year since 2003, her primary care physician has completed a "PGE Medical Certificate," indicating that her health will suffer if her electricity is shut off. *Id*, p. 10. Since 2004, McCracken has received Medicaid-waivered services to avoid placement in a state-run facility, including assistance with her home heating costs through LIHEAP. *Id*, pp. 1-2 & Attachment 1.

The current dispute began in September 2009 and apparently continues to date.[3] She alleges that PGE has failed to properly credit LIHEAP payments to her account, twice unlawfully shut off her power in September 2009 and May 2010, unlawfully charged fees to her account, and has unlawfully assessed fees for the reinstatement of her electrical service. *Id*, pp. 6-11. As a result, she seeks a "redress of wrongs, a punitive damages award and a contract for electrical power for herself and her disabled daughter be provided free for life by PGE." *Id*, p. 11.

The Amended Complaint references various federal laws and legal concepts which appear to allege four different claims. The first claim is based on a violation of "Section 202 of Title II" of the Americans with Disabilities Act, 42 USC §§ 12132 and 12134, which prohibits public entities from discriminating against the disabled. *Id*, pp. 2-3. This claim is premised on PGE shutting off her power twice without cause and charging her a $195.00 service reconnection fee that she did not agree to pay.

///

///

---

[3] In her subsequent motions for preliminary injunction, McCracken alleges that she received a 5-day final shut-off notice from PGE dated April 15, 2011, and two later automated telephone calls warning that her electricity would be shut-off for failure to pay $485.00.

The second claim appears to be "Banking Fraud." *Id*, p. 6. McCracken alleges that PGE improperly charged her $498.00 in August 2010 and deducted that amount directly from her bank account pursuant to an auto-payment program that she had established with PGE. *Id*.

The third claim is titled "Racketeering of Federal Funds." *Id*, p. 9. McCracken alleges that PGE has committed fraud because it "double charges for power, thereby collecting from the state and federal government[s] without applying the funds to the recipients of LIHEAP and then fraudulently disconnects power on the disabled in poverty." *Id*. Although requested, the PUC has refused to audit PGE for fraud. *Id*.

McCracken's fourth claim allegedly arises under 42 USC § 1983 for discrimination against her because she is "disabled in poverty[.]" *Id*. As a result of this discrimination, McCracken alleges that PGE stopped providing electrical power service to her home for seven days in May 2010. *Id*, p. 10. This caused high humidity and mold growth in her home which forced her to buy propane she could not afford to dry out her home and also has caused the propane company to deny her further credit to obtain propane. *Id*.

## II. <u>State Defendants' Motion</u>

McCracken does not separately state any particular claim against any particular State Defendant. Instead, she generally alleges that various state agencies and officers have "done nothing to stop the abuse by PGE" (*id*, p. 7), refused to audit PGE (*id*, p. 8), and failed to satisfactorily respond to her complaints about PGE's actions, instead opting to send her on a wild goose chase from agency to agency (*id*, pp. 8-9) ("the PUC says see the DHS HCS, then DHS HCS says ask the OPUC. 'ROUND AND AROUND' we go with no one taking responsibility"). She also sues the former governor, Kulongoski, as the person responsible for leading state

agencies. *Id*, p. 8 ("Since the Governor is the Head of State responsible for all Departments of the State government, it seems only right that his official capacity is in question here along with all state actors, especially since multiple calls were placed to the Governor's Advocacy office to no avail in May 2010 forward."). The State Defendants seek dismissal based on immunity under the Eleventh Amendment and for failure to state a claim upon which relief can be granted.[4]

At most, McCracken alleges that the State Defendants have failed to adequately intervene in her dispute with PGE. However, she faces an insurmountable hurdle with respect to her claims against them, namely the Eleventh Amendment which "bars suits [in federal court] against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F3d 1182, 1185 (9th Cir), *cert denied*, 528 US 816 (1999), citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 US 89, 100 (1984). The Eleventh Amendment also prohibits claims for damages against state officers in their official capacity because their actions "are in reality suits against the state itself." *Id* (citation omitted).

McCracken argues that the State of Oregon, its agencies, and officers, have waived their Eleventh Amendment immunity by accepting federal funds and by discriminating against disabled persons in violation of Title II of the ADA. There is Ninth Circuit authority for the proposition that a state is not immune under the Eleventh Amendment for claims brought against it pursuant to Title II of the ADA. *Phiffer v. Columbia River Corr. Inst.*, 384 F3d 791, 793 (9th Cir 2004) (citations omitted). However, McCracken has not alleged that the State of Oregon or any of its agencies or officials have violated Title II of the ADA. Instead, she alleges that various

---

4 In her response to PGE's motion, McCracken states that she "removes any & all claim[s]" against the PUC (docket # 62, p. 11). This court granted McCracken's request to dismiss the PUC as a defendant on May 11, 2011 (docket # 86).

State Defendants have failed to adequately respond to her complaints about PGE's alleged violations of the ADA. Amended Complaint, pp. 3 ("PGE denies proper use of LIHEAP funding" and "Plaintiff . . . has been discriminated against by PGE"), 9 (McCracken has "attempt[ed] to find an explanation to this discrimination and resolve payment issues between a disabled client in poverty and PGE to no avail" and "PGE's actions denies [sic] Plaintiff the full amount of energy assistance"). Thus, even if the State of Oregon can be sued for violating Title II of the ADA, McCracken has failed to allege any such claim against any State Defendant.

The State of Oregon, its agencies, and its officials in their official capacity are immune from McCracken's claims. To the degree there is some authority for waiver of that immunity for certain claims under Title II of the ADA, McCracken has alleged no such claim. Accordingly, to the extent McCracken alleges any claim against the State Defendants in their official capacities, they are entitled to dismissal of those claims.

Based on McCracken's response to the State Defendants' motion, it appears that she also seeks to allege a § 1983 claim against the individual State Defendants in their personal capacities for a denial of procedural due process. The Eleventh Amendment does not bar suits against state officials sued in their personal or individual capacities. *Hafer v. Melo*, 502 US 21, 27-31 (1991); *Stivers v. Pierce*, 71 F3d 732, 749 (9th Cir 1995). "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 US 159, 165 (1985) (citation omitted). Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. *Id* at 166. Any judgment may be executed only against the official's personal assets. *Id*.

This claim rests on McCracken's accusation that individual State Defendants retaliated against her for filing this lawsuit by discontinuing her benefits under the federal Medicaid-waivered service called Independent Choices Program ("ICP"). Those benefits were ostensibly terminated because she refused an in-home assessment. McCracken claims that she never refused such an assessment. Although she requested an administrative hearing to restore her ICP benefits, she has not yet been provided a hearing and also contends that Sundet told her that her issues with PGE and energy assistance were not subject to an administrative hearing. Plaintiff's Responsive Pleadings to State's Motion to Dismiss (docket # 58), p. 5.

If a recipient of government benefits has a strong interest in maintaining them, then the benefits cannot be terminated without due process. *Goldberg v. Kelly*, 397 US 254, 264-69 (1970) (government could not terminate welfare benefits without due process). The problem with McCracken's claim is that a denial of her home heating benefits, even if wrongful, is not a denial of procedural due process. As Judge Brown previously advised McCracken, Oregon law sets out a process with the PUC for addressing disputes with utilities related to turning off power and as to billing matters. OAR 860-021-0015. If the PUC fails to act or a customer disagrees with the PUC's action, then the customer may file a lawsuit against the PUC pursuant to ORS 183.484 in either Marion County or the county where the customer resides. Unless McCracken has been denied the use of that administrative and statutory process, she cannot claim a denial of due process. It appears that McCracken tried to take advantage of that process, but may have been given erroneous advice by Sundet. However, McCracken cannot establish reliance on Sundet's erroneous advice in light of Judge Brown's unequivocal advice. Because

McCracken has not yet been denied procedural due process, she fails to state a viable claim against any State Defendant in their personal capacities.

Accordingly, the State Defendants' motion to dismiss should be granted.

## III. PGE's Motion

PGE seeks dismissal based on lack of subject matter jurisdiction, arguing that the Amended Complaint fails to state any claim for relief against it for violating any federal statute.

McCracken filed a responsive pleading containing a motion to dismiss PGE's motion as untimely filed and for failing to file a corporate disclosure statement as required by FRCP 7.1 and to confer in good faith as required by LR 7-1(a) (docket # 62).[5] This pleading violates both Local Rule 7-1(b) ("Motions may not be combined with any response, reply, or other pleading.") by combining a motion with a response to the merits of PGE's motion and Local Rule 7-1(c) ("Every motion must be accompanied by a separately filed legal memorandum.") by failing to include a separately filed legal memorandum. Therefore, this court construed it as a response to PGE's motion, rather than as a separately filed motion to strike (docket # 63).

Even if construed as a separate motion to strike, it lacks merit. As required by FRCP 12(a)(1)(A), PGE timely filed its motion to dismiss on February 8, 2011, the 21st day after it received the service of summons on January 18, 2011 (docket # 41). A failure to file a corporate disclosure statement is not jurisdictional as a condition precedent to filing a motion to dismiss. The record also shows that PGE's counsel complied with LR 7-1(a) by certifying that she made a good faith attempt to confer with McCracken prior to filing. In fact, McCracken admits that

---

[5] This same pleading also contained a motion "for the court to grant plaintiff a mandate from protection from abuses admitted by PGE & state neglect" and to remove the PUC as a defendant. The former request is nothing more than a request for a preliminary injunction which this court has denied several times, and the latter request is moot.

when PGE's counsel telephoned her on February 4, 2011, about the motion, she did not agree and objected to dismissal (docket # 62, p. 2).

**A. ADA Claim**

McCracken alleges a claim against PGE under Title II of the ADA, 42 USC § 12132,[6] which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation and any commuter authority . . .". 42 USC § 12131(1).

PGE is not a state or local government. However, McCracken appear to contend that it fall within the definition of a "public entity" as an instrumentality of the State of Oregon by alleging that it receives funding to pay her bills from a government source. Such an allegation is insufficient to convert PGE into an instrumentality of the state. *See Edison v. Douberly*, 604 F3d 1307, 1308-10 (11th Cir 2010) (citing cases). McCracken does not allege that PGE has any contract with the State of Oregon or is even implementing the LIHEAP program. Instead, PGE simply receives payment from the LIHEAP program for customers' bills. This is insufficient to support an ADA claim. *See Schiavo ex rel Schindler v. Schiavo*, 403 F3d 1289, 1293, 1299 (11th Cir 2005) (*per curiam*) (hospice receiving federal funds not subject to 42 USC § 12132).

---

[6] McCracken also refers to 42 USC § 12134, but that statute merely authorizes the Attorney General to promulgate implementing regulations.

Because PGE is not a "public entity," it cannot be held liable for violating 42 USC § 12132 and this claim should be dismissed..

**B. Banking Fraud Claim**

The federal bank fraud statute, 18 USC § 1344, provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

This is a criminal statute. "It is well settled that unless specifically provided for, federal criminal statutes rarely create private rights of action." *Milgrom v. Burstein*, 374 F Supp2d 523, 529 (ED Ky 2005) (no private right of action exists for violation of federal bank fraud statute), citing *Nashville Milk Co. v. Carnation Co.*, 355 US 967 (1958); *see also Thornton v. Rozen Const.*, 2010 WL 882824 *2 (WD Mich March 8, 2010) (noting that 18 USC § 1344 provides no private right of action and only criminalizes fraud committed *against* a bank, not against private parties). Thus, this claim should be dismissed.

**C. Racketeering Claim**

The claim titled "Racketeering of Federal Funds" appears to be based on violation a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC § 1962. To state a RICO claim, a plaintiff must allege that the defendant: (a) received income derived from a pattern of racketeering activity, and used the income to acquire or invest in an enterprise in interstate commerce; (b) acquired or maintained an interest in, or control of, an enterprise engaged in interstate commerce through a pattern of racketeering activity; (c) caused an

enterprise engaged in interstate commerce, while employed by the enterprise, to conduct or participate in a pattern of racketeering activity; or (d) conspired to engage in any of these activities. 18 USC § 1962. To prevail, a party "must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" *United States v. Turkette*, 452 US 576, 583 (1981). A "pattern" requires the commission of at least two acts of "racketeering activity" within a ten-year period. 18 USC § 1961(5). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 USC § 1961(4).

The Amended Complaint alleges that PGE committed racketeering through "double charges for power, thereby collecting from the state and federal government[s] without applying the funds to the recipients of LIHEAP and then fraudulently disconnects power on the disabled [person] in poverty." Amended Complaint, p. 9. These allegations are insufficient to state a RICO claim. They not only fail to allege an enterprise engaged in a pattern of racketeering activities in concert with any other defendant, but also fail to allege which subsection of the RICO statute has been violated. *See Reynolds v. East Dyer Devel. Co.*, 882 F2d 1249, 1251 (7th Cir 1989) ("[I]t is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated"); *see also Izenberg v. ETS Servs., LLC*, 589 F Supp2d 1193, 1203 (CD Cal 2008) (quoting *Reynolds* and dismissing RICO claim against a defendant allegedly attempting to foreclose on plaintiffs' property).

McCracken also fails to allege a pattern of racketeering activity with enumerated predicate acts under RICO. The list of RICO predicate acts is set forth in 18 USC § 1961.

The allegation of "double charges for power" by PGE does not qualify as any of the listed predicate acts.

Thus, the racketeering claim should be dismissed.

**D. § 1983 Claim**

The fourth claim allegedly arises under 42 USC § 1983 based on PGE discriminating against McCracken because she is "disabled in poverty[.]" Amended Complaint, p. 9. Due to that alleged discrimination, PGE stopped electrical power service to her home in May 2010.

"Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F3d 807, 812 (9th Cir 2001), quoting *West v. Atkins*, 487 US 42, 46 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 US at 49 (citations omitted). This requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US 40, 50 (1999) (citations and internal quotation marks omitted).

Because PGE is a private entity, it does not act under color of state law and cannot be held liable under § 1983 absent evidence that it conspired with state officials to deprive McCracken of a federal right. *Kimes v. Stone*, 84 F3d 1121, 1126 (9th Cir 1996). McCracken appears to believe that a conspiracy exists between PGE and one or more of the State Defendants to deprive her of electricity. However, to state a claim against a private entity on a § 1983 conspiracy theory, a complaint "'must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Ciambriello v. County of*

*Nassau*, 292 F3d 307, 324 (2nd Cir 2002), quoting *Spear v. Town of W. Hartford*, 954 F2d 63, 68 (2nd Cir 1992). A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 conspiracy claim against the private entity. *Id*. As McCracken fails to provide any factual basis for her conspiracy theory, she fails to state a valid § 1983 claim for pleading purposes.

In addition, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[.]" *West*, 487 US at 48. McCracken fails to allege the deprivation of any federal constitutional right. As discussed above, she cannot state a claim for denial of due process, and this court cannot conceive of any other deprivation of a constitutional right to support her claim. Thus, amendment would be futile.

Thus, the § 1983 claim should be dismissed.

## IV. <u>Supplemental Jurisdiction Over State Claims</u>

McCracken may have viable state law claims arising from the alleged misapplication of her energy payments or termination of service despite payment. However, this court has no diversity jurisdiction over such claims under 28 USC § 1332(a). There is no allegation that the amount in controversy is $75,000.00 or greater or that the parties are citizens of different states. To the contrary, all relevant allegations in the Amended Complaint and the attached documents indicate that McCracken resides in Oregon and that PGE is an Oregon corporation conducting business in Oregon.

This court cannot exercise supplemental state law jurisdiction over any state law claims under 28 USC § 1367(a) where it has no subject matter jurisdiction over the federal claims. When a court concludes that it lacks subject matter jurisdiction over federal claims, it has "no

discretion to retain supplemental jurisdiction over [a plaintiff's] state law claims." *Scott v. Pasadena Unified Sch. Dist.*, 306 F3d 646, 664 (9th Cir 2002) (citations omitted). "Dismissal of all Federal claims under Rule 12(b)(1) for lack of subject matter jurisdiction precludes the exercise of supplemental jurisdiction." *Central Delta Water Agency v. United States Fish & Wildlife Service*, 653 F Supp2d 1066, 1094 (ED Cal 2009), citing *Herman Family Revocable Trust v. Teddy Bear*, 254 F3d 802, 806 (9th Cir 2001). This court has concluded that the State Defendants are either immune or that McCracken has pled no viable claim against them. It has likewise concluded that McCracken's claims against PGE are meritless as they do not allege a viable claim for violation of a variety of federal statutes. In short, there is no basis for this court to exercise federal subject matter jurisdiction, and no hint in the record that jurisdiction may lie based on diversity of citizenship. Accordingly, whatever the merits of McCracken's state law claims, this court is not at liberty to exercise supplemental jurisdiction over those potential claims.

///

///

///

///

///

///

///

///

///

**RECOMMENDATIONS**

For the reasons stated above, both the State defendants' Motion to Dismiss (docket # 47) and PGE's Motion to Dismiss (docket # 54) should be GRANTED and the Amended Complaint should be dismissed with prejudice.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by August 5, 2011. If no objections are filed, then these Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

This Findings and Recommendations is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 19th day of July, 2011.

s/ Janice M. Stewart____________________
Janice M. Stewart
United States Magistrate Judge